UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KELLY DAVID RICE, | ) | Case No. 1:19-cv-2665 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Carmen E. Henderson |
| ANDREW SAUL, COMMISSIONER | ) | |
| OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiff Kelly David Rice applied for supplemental security income benefits. His application was denied, both initially and after reconsideration. Plaintiff requested a hearing, after which the administrative law judge also denied his application. He appealed, but the appellate council declined review, rendering final the Commissioner's denial. Plaintiff then sought review in federal court. The Magistrate Judge recommends affirming the Commissioner's decision and Plaintiff objects to that recommendation.

For the reasons that follow, the Court **OVERRULES** Plaintiff's objections (ECF No. 20), **ADOPTS** the Report and Recommendation (ECF No. 17), and **AFFIRMS** the Commissioner's denial of Plaintiff's application for supplemental security income ("SSI").

## FACTUAL AND PROCEDURAL BACKGROUND

In late 2016, Mr. Rice applied for supplemental security income. (ECF No. 11, PageID #156.) He claimed that as of January 1, 2016, he was disabled due to depression and anxiety. (*Id.*, PageID #157.) The Commissioner denied his application initially and after reconsideration. (*Id.*, PageID #171, 188.) Mr. Rice then requested a hearing before an administrative law judge, who also denied his application. (*Id.*, PageID #207.)

### A.  The Administrative Hearing

On July 11, 2018, the ALJ conducted a hearing to determine whether Plaintiff was disabled as the Social Security Act defines that term. (*Id.*, PageID #79.) At the hearing, the ALJ heard testimony from both Mr. Rice (i*d.*, PageID #106–26) and a vocational expert, Ted Macy (*id.*, PageID #126–31).

Mr. Rice testified that he had chronic abdominal pain resulting from his history of hernia surgery. (*Id.*, PageID #118–25.) He also testified that he walked twenty-five to thirty minutes from his home to the hearing, bought groceries three times a week, did laundry once a month, and did not prepare any hot food at home. (*Id.*, PageID #107, 115, 116.)

The ALJ recounted and considered Plaintiff's testimony. (*Id.*, PageID #87–88.) The ALJ narrated the medical record documenting Plaintiff's persistent complaints of chronic abdominal pain even where the objective medical assessments did not reveal any acute issues in the abdominal area. (*Id.*, PageID #87.) For instance, the ALJ pointed to Mr. Rice's complaints of such pain even though the surgical site was

"healed with no signs of inflammation" and later tomography imaging showed no abdominal abnormalities. (*Id.*, PageID #1091–92, 1204.) Also, the ALJ noted that Mr. Rice reported pain relief due to a placebo effect after an injection containing only saline. (*Id.*, PageID #1305.) Further, the ALJ pointed to the record reflecting "drug seeking behavior" and abuse of prescribed opiate painkillers. (*Id.*, PageID #433, 611.)

After considering this evidence, the ALJ determined that Mr. Rice's statements concerning "the intensity, persistence and limiting effects" of his symptoms were inconsistent with the medical evidence in the record. (*Id.*, PageID #88.) Nonetheless, the ALJ concluded that Mr. Rice's subjective reporting supported a reduction in exertional demand to medium levels with some additional limitations for the residual functional capacity determination. (*Id.*, PageID #87.)

### B. Non-Testimonial Evidence

Three categories of evidence also bear on the issues before the Court: (1) the opinions of State agency medical consultants; (2) a mental impairment questionnaire a licensed therapist, Dominique Laster, completed; and (3) the functional capacity evaluation Drs. Fetsko and Vargo completed.

### B.1. State Agency Consultants

State agency consultants evaluated whether Mr. Rice has any medically determinable impairments that affect his ability to function in a work setting. In January and June 2017, State agency psychologists considered Mr. Rice's functionality in understanding and memory, concentration and persistence, and social interactions. (*Id.*, PageID #167–69, 185–87.) The doctors opined that Mr. Rice

"can have brief and occasional contact with the general public" and can adapt to changes in the work setting. (*Id.*, PageID #169, 187.) The ALJ gave the opinions of these consultants significant weight, finding they were consistent with Mr. Rice's sporadic treatment and inconsistent reporting of symptoms. (*Id.*, PageID #89.)

In February and June 2017, State agency physicians considered Mr. Rice's exertional and environmental limitations. (*Id.*, PageID #165–67, 184–85.) The doctors opined that Mr. Rice can lift or carry fifty pounds occasionally and twenty-five pounds frequently and that Mr. Rice should avoid all exposure to workplace hazards. (*Id.*, PageID #166–67, 184–85.) Further, they opined that Mr. Rice's hernia and abdominal pain "do not cause more than a mild limitation." (*Id.*, PageID #167, 185.) The ALJ also gave these opinions considerable weight because they were consistent with the absence of objective evidence supporting Mr. Rice's claims of physical symptoms. (*Id.*, PageID #89.)

### B.2. Laster's Mental Impairment Questionnaire

Dominque Laster is a licensed therapist who had weekly contact with Mr. Rice. (*Id.*, PageID #1267.) She assessed Mr. Rice's mental impairment on June 7, 2018. (*Id.*, PageID #1268.) On a check-box form, Laster identified Mr. Rice as having "severely depressive episodes" and "instances of suicidal ideations." (*Id.*, PageID #1267.) On a list of mental work-related tasks, Laster checked that Mr. Rice was "seriously limited, but not precluded" on thirteen out of twenty categories. (*Id.*, PageID #1267–68.) The ALJ gave only some weight to Laster's opinion because it was inconsistent with the State agency consultants, who indicated that Mr. Rice was

4

able to carry out directions and have contact with the general public. (*Id.*, PageID #88.)

### B.3. Drs. Fetsko and Vargo's Functional Capacity Evaluation

On referral by Mr. Rice's treating physician, Drs. Fetsko and Vargo completed a functional capacity evaluation for Mr. Rice in August 2018. (*Id.*, PageID #1654.) They opined that Mr. Rice could lift to waist level five to ten pounds frequently and twenty pounds occasionally. (*Id.*, PageID #1651, 1659–60.) Both Drs. Fetsko and Vargo noted that Mr. Rice was referred for a functional capacity assessment due to "chronic abdominal pain." (*Id.*, PageID #1654, 1659.) They also noted that Mr. Rice's performance on lifting and exertional activities seemed "symptom-limited" and "self limited by his chronic abdominal pain." (*Id.*, PageID #1651, 1659.) Based on these comments in the record, the ALJ concluded that Mr. Rice "may have given a poor effort on strength tests." (*Id.*, PageID #89.) The ALJ gave little weight to Drs. Fetsko and Vargo's opinions because the physical limitations they reported were inconsistent with the objective evidence for physical impairment and with the opinions of the State agency physicians, who indicated Mr. Rice was capable of more lifting and carrying. (*Id.*)

### C. Administrative Law Judge's Decision

After taking testimony and considering the record, the ALJ issued a written decision denying Mr. Rice's application. (*Id.*, PageID #76.) In that decision, the ALJ determined he was not bound by a prior finding about Mr. Rice's residual functional

capacity because Mr. Rice provided "new and material evidence regarding" Plaintiff's functional capacities and potential disability. (*Id.*, PageID #80–81.)

Then, the ALJ outlined and conducted the customary five-step inquiry to determine whether Mr. Rice was disabled under Section 1614(a)(3)(A) of the Social Security Act. At step one, the ALJ found that Mr. Rice had not engaged in substantial gainful activity since November 2, 2016. (*Id.*, PageID #83.) At step two, the ALJ determined that Mr. Rice had several severe impairments, including "hernias and abdominal pain, a depressive disorder, and an anxiety disorder." (*Id.*, PageID #83.) The ALJ noted additional diagnoses of Mr. Rice that did not constitute severe impairments, including aneurysmal dilation of the thoracic aorta, hepatitis, gastroesophageal reflux disease, and migraine headaches. (*Id.*) The ALJ noted that Mr. Rice had a lengthy history of substance abuse. (*Id.*) At step three, the ALJ found that Mr. Rice did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, app. 1 (20 C.F.R. 416.920(d), 416.925 and 416.926). (*Id.*, PageID #84.)

As to step four, the ALJ found that Mr. Rice's residual functional capacity would permit him to perform medium work, with several exceptions:

> [T]he claimant has the residual functional capacity to lift, carry, push or pull 50 pounds occasionally, and 25 [pounds] frequently. The claimant can sit for six hours out of an eight-hour day. The claimant can stand and walk for six hours out of an eight-hour day. The claimant can frequently stoop, crouch, or crawl. The claimant cannot work at unprotected heights or around moving mechanical parts. The claimant can understand, remember, and carry out simple tasks, and can occasionally interact with the public.

(*Id.*, PageID #86.)

Finally, at step five, the ALJ determined that Mr. Rice could perform his past relevant work given his residual functional capacity and the physical and mental demands of the work. (*Id.*, PageID #90.) In the alternative, the ALJ determined that Mr. Rice can perform other jobs that exist in significant numbers in the national economy given his age, education, work experience, and residual functional capacity. (*Id.*, PageID #91.) Therefore, the ALJ found that Mr. Rice was not disabled and denied his application. (*Id.*, PageID #92.) The Appeals Council declined further review, rendering the ALJ's decision final on September 18, 2019. (*Id.*, Page ID #68–70.)

### D. Report and Recommendation

Mr. Rice timely filed this action on March 27, 2020, seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 1.) The Magistrate Judge considered the case and entered her report and recommendation that the Court affirm the ALJ's decision denying Mr. Rice's application. (ECF No. 17.) Plaintiff raised several issues to the Magistrate Judge, but the Court limits its discussion of the report and recommendation to the issues to which Plaintiff now objects. *See* 28 U.S.C. 28 U.S.C. § 636(b). First, whether the ALJ properly considered and evaluated the evidence. Second, whether the ALJ properly evaluated Mr. Rice's credibility.

### D.1. The R&R and Substantial Evidence

On appeal to federal court, the Magistrate Judge determined that the weight the ALJ gave to Laster's opinion was proper. (ECF No. 17, PageID #1729.) As an initial matter, the Magistrate Judge agreed with the ALJ that Laster was not a

treating source because she was not an "acceptable medical source" under 20 C.F.R. § 416.902(a). (*Id.*) Accordingly, the ALJ was not required to give Laster's opinion controlling weight, nor was he required to give "good reasons" for the weight he gave Laster's opinion. (*Id.*) Further, the Magistrate Judge found that substantial evidence supports the ALJ's decision. (*Id.*, PageID #1731.) She pointed to the ALJ's narration of the medical evidence of Mr. Rice's mental health evidence showing the "periodic, on-and-off nature of Rice's symptoms and treatment-seeking actions." (*Id.*) Further, the Magistrate Judge concluded that the ALJ did not err by giving greater weight to the State agency psychologists' opinions than to Laster's opinion. She noted that such allocation of weight was "not, in and of itself, error" and that the ALJ properly gave the psychologists' opinions significant weight because their opinions aligned with Mr. Rice's "sporadic treatment and inconsistent reporting of symptoms." (*Id.*, PageID #1733.)

Additionally, the Magistrate Judge determined that substantial evidence supports the ALJ's decision concerning Drs. Fetsko and Vargo's opinion. She agreed with the ALJ that Drs. Fetsko and Vargo are not treating sources. (*Id.*, PageID #1734.) Accordingly, giving greater weight to the State agency physicians was not error because the ALJ considered the developments in the record that occurred after the physicians' review and incorporated restrictions into Mr. Rice's residual functional capacity based on Mr. Rice's testimony. (*Id.*, PageID #1735.) Finally, the Magistrate Judge determined that substantial evidence from multiple sources

8

supported the ALJ's interpretation of Drs. Fetsko and Vargo's statements to mean that Mr. Rice "may have given a poor effort" on the strength tests. (*Id.*)

### D.2. Mr. Rice's Credibility

The Magistrate Judge determined that substantial evidence supports the ALJ's credibility determination regarding Mr. Rice. (*Id.*, PageID #1740.) She agreed with the ALJ that the objective medical evidence belied Mr. Rice's subjective statements about his physical symptoms, pointing to several instances in the medical record that are at odds with Mr. Rice's complaints of constant abdominal pain. (*Id.*, PageID #1738.) Further, the Magistrate Judge determined that the ALJ did not base his credibility determination on Mr. Rice's failure to provide a function report as Plaintiff alleged; rather, the ALJ thoroughly summarized Mr. Rice's physical and mental impairments and narrated the relevant medical records. (*Id.*, PageID #1738–39.)

### E. Plaintiff's Objections

Plaintiff timely objected to the Magistrate Judge's Report and Recommendation. (ECF No. 20.) Plaintiff makes the following objections: (1) the ALJ should have accorded more weight to Laster's opinion; (2) the ALJ should have accorded more weight to Drs. Fetsko and Vargo's functional capacity evaluation because it was a treating source opinion; and (3) the ALJ's credibility determination regarding him was not supported by substantial evidence. (*Id.*, PageID #1749–51.)

9

ANALYSIS

The Court reviews de novo the portions of a Magistrate Judge's report and recommendation to which specific objections are made. 28 U.S.C. § 636(b)(1)(C); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). "De novo review requires the Court to re-examine the relevant evidence a magistrate judge reviewed to determine whether to accept, reject, or modify the report and recommendation." *Scott v. Saul*, No. 1:19-cv-2393, 2021 U.S. Dist. LEXIS 92052, at \*12–13 (N.D. Ohio May 14, 2021); *see* 28 U.S.C. 636(b).

When a party objects, review is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record and by reviewing any legal errors. *Wright v. Massanari*, 321 F.3d 611, 614–15 (6th Cir. 2003). "Substantial evidence" is more than a scintilla, but less than a preponderance. *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* If substantial evidence supports the Commissioner's findings, then the Court accepts them as conclusive, even if it would have reached a different outcome on the same facts. 42 U.S.C. § 405(g).

I. **The Proper Weight of Laster's Opinion**

Plaintiff argues that the ALJ's failure to accord more weight to Laster's opinion merits remand. (ECF No. 20, PageID #1750.) To start, Plaintiff does not contest the Magistrate Judge's determination that the ALJ was not required to give Laster's opinion controlling weight because she was not a treating source. (ECF No. 17,

10

PageID #1729; ECF No. 20, PageID #1749.) This does not mean, however, an outright disregard of Laster's opinion would be permissible. As the ALJ and Magistrate Judge acknowledged, non-acceptable medical sources "may be used to show the severity of the claimant's impairments and how they affect the individual's ability to function." (ECF No. 11, PageID #88; ECF No. 17, PageID #1730–31.) An administrative law judge has discretion to determine the proper weight to afford opinions from "other sources." *Cruse v. Commissioner of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). The finder of fact should give weight to other-source opinions and evaluate them based on relevant factors, including: (1) the length and frequency of the relationship; (2) the opinion's consistency with other admitted evidence; (3) the opinion's supporting evidence; (4) the opinion's explanation; (5) the provider's specialty or area of expertise related to the individual's impairments; and (6) any other factors that tend to support or refute the opinion. 20 C.F.R. § 416.927; SSR 06-03p, 2006 WL 2329939.

Specifically, Plaintiff objects to the ALJ discounting Laster's opinion due to its inconsistency with the State agency psychologists' opinions. The crux of Plaintiff's argument is that the State psychologists, unlike Laster, did not review a complete record. (ECF No. 20., PageID #1749–50). But review of a complete record is not required. There is "no categorical requirement that [a] non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record" as Plaintiff contends. *Helm v. Commissioner of Soc. Sec.*, 405 F. App'x 997, 1002 (6th Cir. 2011) (quoting SSR 96-6p). The opinions need only be "supported by evidence in the case record." *Id.* Here, the record supports the State psychologists' opinions. The ALJ

11

considered and recited the evidence demonstrating the episodic nature of Plaintiff's symptoms and his treatment-seeking behavior. (ECF No. 11, PageID #88.) As the Magistrate Judge recognized (ECF No. 17, PageID #1731), the ALJ reviewed the whole record and relied on it when determining Plaintiff's mental health limitations.

Plaintiff also objects to the greater weight given to the State agency psychologists' opinions where Laster had "an area of expertise related to Plaintiff's impairments" due to her established relationship with him. (ECF No. 20, PageID #1749–50.) But the Sixth Circuit holds that giving greater weight to a State agency consultant's opinion over an examining or treating source is "not, in and of itself, error." *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007). Instead, "[i]n appropriate circumstances, opinions from State agency medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." *Id*. And if the claimant augments the medical evidence in the record after the initial or reconsideration stages, then there must be "some indication that the ALJ at least considered" this difference and the record's new facts "before giving greater weight to an opinion that is not based on a review of a complete case record." *Id*.

Plaintiff points to several pieces of evidence he contends reflect a deterioration in his psychological condition after the State agency psychologists' review. (ECF No. 20, PageID #1750). Plaintiff identifies his suicidal ideation and placement in twenty-three-hour observation during hospitalization in May 2017 (ECF No. 11, PageID #1355), and to treatment notes from Signature Health from June and July 2018 noting that Mr. Rice had suicidal ideation (*id.*, PageID #1631, 1641). But the

12

ALJ addressed the medical evidence that post-dated the psychologists' assessments in his narration of Mr. Rice's mental health issues. *See Crum v. Commissioner of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (recognizing that, if the ALJ narrates the conflicting medical evidence in the record, then the ALJ is not required to restate it when explaining how an opinion is inconsistent with the evidence). The ALJ specifically referenced the treatment notes from Plaintiff's May 2017 hospitalization, noting that he "again alleged depression and anxiety, with thoughts of self-harm, but asserted that all psychiatric medications make him sick and he did not want to be on them." (ECF No. 11, PageID #88.) Moreover, the ALJ specifically referenced the June 2018 Signature Health treatment notes when he stated that Mr. Rice "denied anxiety but alleged symptoms of depression." (*Id.*, PageID #88, 1635–36.) The ALJ noted as well that Mr. Rice "reportedly had no anxiety or depression on examination" in May 2018. (*Id.*, PageID #88, 1306.) It is well established that an administrative law judge can "consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Commissioner of Soc. Sec.*, 167 F. App'x 496, 507–08 (6th Cir. 2006). Accordingly, the ALJ did not err in giving greater weight to the State psychologists despite their incomplete review of the record because the ALJ separately considered the evidence that was not available to the State psychologists.

Additionally, the Sixth Circuit has held that check-box forms, which only require an individual to check a box or fill in blanks that lack other narrative or explanation, are conclusory opinions that amount to "weak evidence at best."

13

*Hernandez v. Commissioner of Soc. Sec.,* 644 F. App'x 468, 474 (6th Cir. 2016) (citing *Mason v. Shalala,* 994 F.2d 1058, 1065 (3d Cir. 1993)). Laster's opinion was a check-box form that lacked any description or narrative summary about Mr. Rice's condition. (ECF No. 11, PageID #1267–68.) Therefore, the Court agrees with the Magistrate Judge that there is substantial evidence that the ALJ properly considered and discounted Laster's opinion. (*Id.*, PageID #88–89; ECF No. 17, PageID #1731.) For these reasons, the Court overrules Plaintiff's first objection.

## II. Drs. Fetsko and Vargo's Functional Capacity Evaluation

Plaintiff objects that the ALJ failed to accord greater weight to Drs. Fetsko and Vargo's opinions and argues for remand because Drs. Fetsko and Vargo's functional capacity evaluation constituted a treating source opinion that should have received controlling weight. (ECF No. 20, PageID #1751.) Plaintiff raises this argument for the first time in his objections to the Magistrate Judge's report and recommendation. This objection is without merit.

Under the Social Security Administration's regulations, a "treating source" is any "acceptable medical source," including a licensed medical physician, who has an "ongoing treatment relationship" with the claimant. 20 C.F.R. §§ 404.1502(a)(1) & 404.1527(a)(2); *see also Gayheart v. Commissioner of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (describing a treating source as "a medical source who regularly treats the claimant"). As the regulations make clear, an ongoing treatment relationship must be based on an individual's "medical need for treatment or evaluation," and cannot be based "solely on [the] need to obtain a report in support of [a] claim for disability."

14

20 C.F.R. § 404.1527(a)(2). Similarly, visiting a doctor once or twice does not create an ongoing treatment relationship. *See Smith v. Commissioner of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

Plaintiff contends that Drs. Fetsko and Vargo's functional capacity evaluation qualifies as a treating source opinion because he was referred for the evaluation by "his treating physician, Dr. Rajesh [Sharma]." (ECF No. 20, PageID #1750; ECF No. 11, PageID #1646.) As a licensed physician who has treated Plaintiff on at least six occasions, Dr. Sharma appears to be an acceptable medical source who has an ongoing relationship with Plaintiff. (ECF No. 11, PageID #1289-1299.) Even assuming that Dr. Sharma qualifies as a treating source, that does not mean that Drs. Fetsko and Vargo's evaluation resulting from his referral also qualifies as a treating source.

In support of the proposition that "an ALJ should consider [a functional capacity evaluation] as a treating source opinion if referred by the treating physician," Plaintiff cites *Hargett v. Commissioner of Social Security*, 964 F.3d 546, 554 (6th Cir. 2020). (*Id.*, PageID #1751.) In *Hargett*, the plaintiff's treating physician referred the plaintiff for a functional capacity evaluation, then reviewed and signed the evaluation. 964 F.3d at 549. The court considered "whether [the treating physician's] signature on the [functional capacity evaluation], which was completed by a physical therapist, makes the [functional capacity evaluation] a treating-source opinion for purposes of evaluation Hargett's disability claim." *Id.* at 552–53. The court concluded that the ALJ should have considered the functional capacity

15

evaluation a treating-source opinion because the treating physician both referred the plaintiff for the evaluation and signed off on the results of the evaluation. *Id.* at 553. This case differs from *Hargett* because there is no evidence that Dr. Sharma ever reviewed, signed, or adopted the functional capacity evaluation Drs. Fetsko and Vargo completed. Plaintiff fails to explain why a mere referral by a treating physician transforms a resulting evaluation into a treating source opinion. Both factually and legally, such a result makes no sense. Accordingly, the Court agrees with the Magistrate Judge that Drs. Fetsko and Vargo's opinion was not a treating source opinion and that the ALJ accorded it proper weight. (ECF No. 17, PageID #1734–35.)

Finally, Plaintiff points out that Drs. Fetsko and Vargo acknowledged Plaintiff's chronic abdominal pain after his hernia repair. Based on their acknowledgement of his pain, Plaintiff takes issue with the ALJ's conclusion that he may have given a poor effort on the strength test Drs. Fetsko and Vargo administered. (ECF No. 20, PageID #1750.) Drs. Fetsko and Vargo acknowledged Plaintiff's alleged chronic abdominal pain; indeed, that was the reason for which Dr. Sharma referred Mr. Rice for the functional capacity exam. However, Drs. Vargo and Fetsko also opined that Mr. Rice's performance appeared to be "symptom limited" and "self limited." (ECF No. 11, PageID #1651, 1659.) The ALJ interpreted these comments to conclude that Mr. Rice may have given a poor effort on the evaluation, and the Magistrate Judge determined that substantial evidence supports the ALJ's finding. Because Plaintiff offers no reasons why this interpretation is not supported by

16

...

substantial evidence, this objection is without merit. For these reasons, the Court overrules Plaintiff's second objection.

## III. ALJ's Credibility Determination

Plaintiff objects that the ALJ's determination of his credibility warrants remand because it is not supported by substantial evidence and falls outside the ALJ's "zone of choice." (ECF No. 20, PageID #1751.) Specifically, Plaintiff argues that the ALJ "ignored and exaggerated" his abilities and "disregarded the medical evidence which documented Plaintiff's continuing pain at the site of his umbilical hernia." (*Id.*, PageID #1751.)

Ultimately, "credibility determinations regarding subjective complaints rest with the ALJ," and "those determinations must be reasonable and supported by substantial evidence." *Rogers*, 486 F.3d at 249. "An ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531; 20 C.F.R. § 404.1529(a).

The Magistrate Judge rightly rejected Plaintiff's argument. The administrative record shows that the ALJ reviewed and narrated the evidence in the medical record. (ECF No. 17, PageID #1739.) Both the ALJ and the Magistrate Judge extensively examined instances where the objective medical evidence belied Mr. Rice's subjective statements about his physical and mental health. (ECF No. 11, PageID #86–90; ECF No. 17, PageID #1737–40.) "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports,

claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. The Magistrate Judge fairly considered the ALJ's treatment of Mr. Rice's testimony, and the ALJ afforded it the proper weight and sufficiently considered it. Therefore, the Court overrules Plaintiff's third objection.

## CONCLUSION

For the foregoing reasons, the Court **OVERRULES** Plaintiff's Objections (ECF No. 20), **ADOPTS** the Report and Recommendation (ECF No. 17), and **AFFIRMS** the Commissioner's decision denying the Plaintiff's request for benefits. Further, the Court **DIRECTS** the Clerk to enter judgment accordingly.

**SO ORDERED**.

Dated: September 17, 2021

J. Philip Calabrese
United States District Judge
Northern District of Ohio